**Ramon E. COLON–PRATTS, et al., Plaintiffs,**

v.

**MUNICIPALITY OF SAN SEBASTIAN, Defendant.**

**No. CIV.99–2175 (RLA).**

United States District Court, D. Puerto Rico.

March 26, 2002.

Adalina De–Jesús Morales, Río Piedras, PR, for Plaintiffs.

Monique Guillemard–Noble, San Juan, PR, for Defendant.

### ORDER DISMISSING THE COMPLAINT

ACOSTA, District Judge.

Defendant has moved the court to dismiss the complaint filed in this case pursuant to Rule 12(b)(6) Fed.R.Civ.P. It also submitted copy of a Draft Resolution introduced at the Municipal Assembly in San Sebastián in support of its request.

Plaintiff, RAMON E. COLON–PRATTS, claims that the MUNICIPALITY OF SAN SEBASTIAN engaged in a pattern of retaliation based on his open critical posture concerning the local administration headed by Mayor JUSTO MEDINA in violation of his federal constitutional rights, particularly the First Amendment in contravention to 42 U.S.C. § 1983. Additionally, MR. COLON–PRATTS and his spouse [1] have asserted local claims under our supplemental jurisdiction.

---

1. Inasmuch as our analysis will be confined to the § 1983 claim the discussion will be centered on plaintiff, MR. COLON–PRATTS, since the causes of action asserted on behalf of IVELISSE RODRIGUEZ–DROZ derive exclusively from her husband's constitutional challenges which allow for an action sounding in tort. *See Santini Rivera v. Serv. Air, Inc.*, 137 D.P.R. 1 (1994).

## MOTION TO DISMISS

■ In disposing of motions to dismiss pursuant to Rule 12(b)(6) Fed.R.Civ.P. the court will accept all factual allegations as true and will make all reasonable inferences in plaintiff's favor. *Frazier v. Fairhaven School Com.*, 276 F.3d 52, 56 (1st Cir.2002); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001); *Berezin v. Regency Sav. Bank*, 234 F.3d 68, 70 (1st Cir.2000); *Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90, 92 (1st Cir. 2000).

■ Our scope of review under this provision is a narrow one. Dismissal will only be granted if after having taken all well-pleaded allegations in the complaint as true, the Court finds that plaintiff is not entitled to relief under any theory. *Brown v. Hot, Sexy and Safer Prods., Inc.*, 68 F.3d 525, 530 (1st Cir.1995) *cert. den.* 516 U.S. 1159, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996); *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir.1994).

■ Further, our role is to examine the complaint to determine whether plaintiff has adduced sufficient facts to state a cognizable cause of action. *Alternative Energy*, 267 F.3d at 36. The complaint will be dismissed if the court finds that under the facts as pleaded plaintiff may not prevail on any possible theory. *Berezin*, 234 F.3d at 70; *Tompkins*, 203 F.3d at 93.

## THE FACTS/ALLEGATIONS IN THE COMPLAINT

For purposes of our Rule 12(b)(6) determination we take as true the following facts as alleged in the amended complaint.

1. Plaintiff and his wife are 50% owners of a corporation licenced to operate Radio Station WLRP which broadcasts in San Sebastián, Puerto Rico.

2. As part of its programming WLRP has aired a series of public interest programs critical of both the San Se-bastián and central government's administration policies and practices.

3. Plaintiff, who favors independence, is an active journalist publishing articles in a local newspaper and also acting as a commentator hosting programs in WLRP on political and other public interest concerns.

4. JUSTO MEDINA, a New Progressive Party ("PNP") candidate was elected mayor of San Sebastián in 1993 and again in 1996.

5. Plaintiff has hosted numerous radio programs and published many editorials critical of the municipal policies and practices under Mayor MEDINA's tenure.

6. In response to plaintiff's criticisms the MUNICIPALITY, through its Mayor and other high-ranking officials, began to adopt a hostile posture toward the station and toward plaintiff personally. This attitude was demonstrated by the public pronouncements of these municipal officers and by decreasing the use of WLRP by the Municipality for public purposes.

7. During Mayor Medina's tenure the only local competing radio station was renamed "Radio Progreso" and commenced to promote the Mayor's administration and work.

8. In September 1998 the MUNICIPALITY refused to broadcast information pertaining to Hurricane Georges through WLRP even though it was the only radio station in the region on the air during that period and the services were offered free of charge.

9. On October 21, 1988 the Executive Director of the defendant municipality aired a special program [on a competing radio station] during which he harshly criticized plaintiff and WLRP. He also suggested that businesses

boycott WLRP and used derogatory and disparaging language in referring to plaintiff. Further, he indicated the existence of a policy and practice of the Municipality of San Sebastián of denying WLRP access to public information and resources as punishment for plaintiff's political speech.

10. In November 1998 the San Sebastián MUNICIPAL ASSEMBLY received for its consideration a draft resolution sponsored by the MAYOR calling for the investigation of plaintiff's claims against the MUNICIPALITY for allegedly boycotting WLRP.

11. In January 1999 WLRP was awarded the rights to broadcast the local patron saint festivities. However, the MUNICIPALITY did not allow the station to air any part of the Mayor's message and disconnected the feed to the radio station when the Mayor addressed the public.

12. The Municipality prohibits advertisements by its political adversaries during the broadcasting of municipally-sponsored activities.

### TIMELINESS

■ Defendant has moved the Court to dismiss the complaint as time barred pursuant to Rule 12(b)(6) Fed.R.Civ.P. The most analogous state statute of limitations as well as its tolling provisions will be applied to § 1983 actions. *Hardin v. Straub*, 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989) and *Chardon v. Fumero*, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983). In this jurisdiction the one-year period applicable to personal injury actions found at P.R. Laws Ann. tit. 31, § 5298(2) (1990) has been determined

as the pertinent statute of limitations for § 1983 claims. *Andino–Pastrana v. Municipio De San Juan*, 215 F.3d 179, 180 (1st Cir.2000); *Aybar v. Crispin–Reyes*, 118 F.3d 10, 15 n. 6 (1st Cir.1997); *Muñiz–Cabrero v. Ruiz*, 23 F.3d 607 (1st Cir. 1994); *Lafont–Rivera v. Soler–Zapata*, 984 F.2d 1 (1st Cir.1992); *Rodriguez Narvaez v. Nazario*, 895 F.2d 38 (1st Cir.1990).

Defendant argues that the action is untimely and refers to specific events charged in the pleading which took place in September 1998. The original complaint was filed on October 19, 1999. In their response plaintiffs reject defendant's proffered date of the onset of events as September 1998 but rather point to paragraph 19 of the Amended Complaint[2] where they allege that the Municipality's discriminatory practices did not become apparent to them until an October 21, 1999 radio broadcast by the Municipal Executive Director.[3]

■ Although the local provisions are utilized for determining the limitations period in § 1983 claims, federal law governs the date when the limitations period begins to run. *Rivera–Ramos v. Roman*, 156 F.3d 276, 282 (1st Cir.1998). Further, the accrual period will ordinarily commence "when the plaintiff knows, or has reason to know, of the injury on which the action is based." *Carreras–Rosa v. Alves–Cruz*, 127 F.3d 172, 174 (1st Cir.1997) (quoting *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir.1992)).

■ According to ¶ 19 of the complaint, it was not until **October 21, 1998** that plaintiffs first became aware of the retaliatory nature of defendant's conduct. Given

**2.** Defendant incorrectly cites the date when the **amended** complaint was filed in support of its argument. It appears, however, that part of the conduct at issue may have taken place prior to the filing of the initial pleading.

For this reason we shall address the timeliness issue.

**3.** *See* Plaintiffs' Opposition... (docket No. 21) at 3 n. 1.

our limited scope of review under Rule 12(b)(6) we accept plaintiffs' version regarding the accrual of their § 1983 claim and reject defendant's statute of limitations argument at this procedural stage inasmuch as the complaint was filed on **October 19, 1999** which was within the one-year statutory period.

## FIRST AMENDMENT

### Standing

Defendant has challenged plaintiffs' standing to assert First Amendment claims and contends that they belong to WLPR instead. Plaintiffs reject this argument and argue that discriminatory actions were taken specifically in reprisal of MR. COLON–PRATTS' exercise of his First Amendment rights to speak out on matters of public concern.

In order to meet the Article III standing criteria plaintiff must prove: (1) an actual or threatened injury, (2) causation and (3) redressability. *Vermont Agency of Natural Resources v. United States,* 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Bonas v. Town of North Smithfield,* 265 F.3d 69, 73 n. 4 (1st Cir.2001).

First, plaintiff must show that he has "a sufficiently personal stake in the issue" *Becker v. Fed. Election Comm'n,* 230 F.3d 381, 385 (1st Cir.2000) in that he "personally has suffered some actual or threatened injury as a result of the challenged conduct." *Berner v. Delahanty,* 129 F.3d 20, 24 (1st Cir.1997). Thus, he carries the burden of presenting evidence of having suffered "an 'injury in fact' [a harm that is] (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical". *Friends of the Earth,* 528 U.S. at 180, 120 S.Ct. 693 citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d

351 (1992); *Vermont Agency of Natural Resources,* 529 U.S. at 765, 120 S.Ct. 1858.

Second, there must be a causal connection between the purported injury and defendant's acts or omissions. This alleged harm must be "fairly traceable to the challenged action of the defendant." *Friends of the Earth,* 528 U.S. at 180, 120 S.Ct. 693; *Vermont Agency of Natural Resources,* 529 U.S. at 771, 120 S.Ct. 1858.

Lastly, plaintiff must establish that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision", *Friends of the Earth,* 528 U.S. at 181, 120 S.Ct. 693; *Vermont Agency of Natural Resources,* 529 U.S. at 771, 120 S.Ct. 1858, by way of "the declaratory, injunctive and[/or] monetary relief requested." *Weber v. Cranston Sch. Comm.,* 212 F.3d 41, 47 n. 11 (1st Cir.2000).

Further, plaintiff must claim an injury to his/her own personal legal rights and cannot rely on the rights or interests of a third party in bringing a cause of action. In the case of a corporation specifically, since it constitutes a legal entity separate and apart from its individual owners, the shareholders cannot sue to vindicate its alleged constitutional rights, even in situations where they are sole stockholders of the victim corporation. Stockholders may bring § 1983 actions only if they have suffered some injury which is distinct from that suffered by the corporation, i.e., not an indirect, derivative injury. *Potthoff v. Morin,* 245 F.3d 710, 715–17 (8th Cir.2001); *Shell Petroleum, N.V. v. Graves,* 709 F.2d 593, 595 (1983). *See also Willis v. Lipton,* 947 F.2d 998 (1st Cir.1991) (stockholders lacked standing to assert RICO injuries); *Diva's Inc. v. City of Bangor,* 176 F.Supp.2d 30, 39 (D.Me. 2001) (owner had no § 1983 standing for denial of permit absent claim of personal

harm); *Marchese v. Umstead*, 110 F.Supp.2d 361, 367–68 (E.D.Pa.2000) (sole stockholder failed to point to any personal injury as opposed to derivative damages resulting from criminal citation to corporation); *Cardinal Towing & Auto Repair, Inc. v. City of Bedford*, 991 F.Supp. 573, 576 (N.D.Tex.1998) (owner lacked standing to prosecute racial discrimination claims stemming from corporation's bidding process); *Bentley v. Glickman*, 234 B.R. 12, 20 (N.D.N.Y.1999) ("shareholder, even one of a closely held corporation, does not have standing to bring a claim to redress an illegal act of discrimination done to a corporation [based on his age]").

In *Potthoff* the court found that the sole stockholder of a leasing company had no cognizable injury separate and apart from the corporation in an action challenging the termination of a contract with the municipality which plaintiff claimed was in retaliation for his criticism of the mayor. The court rejected plaintiff's claim that the cancellation was attributable to his expressions in violation of his First Amendment rights absent a claim that some individual "legally protectable interest is at stake". *Id.* at 718.

In this particular case MR. COLON–PRATTS has failed to segregate his own personal claims from those asserted on behalf of the Radio Station. In fact, the complaint refers to MR. COLON–PRATTS and WLRP interchangeably. Upon a closer review of the allegations it becomes apparent that except for an averment of persecution through a Draft Resolution sponsored by the MAYOR calling for an investigation which included boycott charges by MR. COLON–PRATTS against the MUNICIPALITY, the injuries complained of are intrinsic to the corporation. These are: (1) decrease in use of WLRP by the Municipality for public purposes; (2) failure to use the station during Hurri-

cane Georges; (3) encouraging a business boycott; (4) policy and practice of denying WLRP access to public information and resources; (5) not allowing the station to air the Mayor's message, and (6) prohibiting advertisements of its political adversaries during the broadcasting of municipally-sponsored activities.

Although we concede that "using government funds to punish political speech by members of the press and to attempt to coerce commentary favorable to the government would run afoul of the First Amendment", *El Dia, Inc. v. Rosselló*, 165 F.3d 106, 109 (1st Cir.1999), the issue here is not the legality *vel non* of the MUNICIPALITY's conduct but who is entitled to bring such a suit in light of the harm pleaded in the complaint.

 Therefore, even if the retaliatory conduct described in items (1) through (6) above may have been triggered by plaintiff's First Amendment expressions, the way the complaint is written any resulting harm is essentially WLRP's harm. Neither MR. COLON–PRATTS nor his spouse have identified any "actual or threatened injury" or "legally protectable right" separate and apart from those inherent to the radio station to support a standing determination as to these particular allegations.

Accordingly, we find that plaintiffs have no standing to assert First Amendment claims for damages resulting from the conduct related in items (1) through (6) above which leaves for further consideration only the denunciations of the Draft Resolution.

### The Draft Resolution

Defendant submitted a copy of the challenged Draft Resolution in support of its petition for dismissal.[4] As plaintiffs concede, "[i]n doing so, the defendant places its dispositive motion outside the scope of

---

**4.** *See* Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss (docket No. 22).

Rule 12(b)(6)"[5] and subjects the motion to a Rule 56 summary judgment analysis instead. *See Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56 (1st Cir.2000); *Collier v. City of Chicopee*, 158 F.3d 601 (1st Cir.1998). Further, plaintiffs having failed to particularize the discovery needed in order to oppose defendant's arguments[6] as mandated by Rule 56(f) there is no need to postpone our ruling for a later date. *Mass. School of Law at Andover, Inc. v. American Bar Assoc.*, 142 F.3d 26 (1st Cir.1998); *Springfield Terminal Ry. v. Canadian Pacific Ltd.*, 133 F.3d 103 (1st Cir.1997).

Summary judgment will be granted where no issues of material fact exist and the petitioner is entitled to judgment as a matter of law. It is nonmovant's burden to demonstrate the existence of a material fact which warrants trial. In examining the evidence presented the court will construe all reasonable inferences in the opposing party's favor. *McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86 (1st Cir. 2002); *Cortés–Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184 (1st Cir. 1997); *Serrano–Cruz v. DFI Puerto Rico*, 109 F.3d 23 (1st Cir.1997).

The claims derived from the Draft Resolution appear at paragraphs 20, 22 and 26 of the Amended Complaint which denounce the illegality of this conduct as follows:

20. The policies and practices of the Municipality in detriment of the constitutional rights of the plaintiffs were further confirmed when a threat by the Vice Mayor became a reality in November, 1998. During that month the Municipal Assembly received, for its consideration a Draft Resolution No. 15, series 1998–99 ("Proyecto de Resolución Núm. 15, Serie 1998–99"). That draft resolution mentions plaintiff Colón–Pratts by name and calls, *inter alia*, for the investigation of alleged claims of the plaintiff against the alleged Municipality for boycotting WLRP.

22. The Draft Resolution constitutes an **institutional threat** of the Municipality to **investigate and persecute** the plaintiffs because of their ideology and because of their expressed criticism of the Municipality on issues of public concern, speech which is protected by the First Amendment to the Constitution of the United States of America. (emphasis ours)

26. The aforementioned Draft Resolution of the Municipality constitutes an **unconstitutional Bill of Attainder** against plaintiff Ramón Edwin Colón–Pratts, in violation of his First Amendment right to freedom of expression. (emphasis ours)

A review of the challenged Municipal Draft Resolution presents a totally different picture. The document calls for an evaluation of the Municipality's Emergency Plan and its handling of the emergency situation created by the passing of Hurricane Georges addressing in particular the claims that the Municipality refused to provide information to WLRP. The Draft Resolution details the Municipality's state-imposed responsibility to establish a coordinated plan to act in conjunction with the Central Government in dealing with emergency situations and mentions plaintiff's allegations that the Mayor refused to broadcast information through WLRP before, during, and after the Hurricane.

**5.** Plaintiffs' Surreply... at 5.

**6.** Plaintiffs merely requested "a reasonable period of 120 days to conduct necessary discovery and present their opposition". Plaintiffs' Surreply... (docket No. 23) p. 8.

In pertinent part, the Draft Resolution reads:

> 1st SECTION: To create a Special Commission of the Honorable Municipal Assembly for the Municipality of San Sebastián to evaluate the performance of the Municipal Administration before, during and after Hurricane Georges, in light of the Emergency Plan prepared by the Municipality, including the public accusations made by Mr. Ramón E. Colón Pratts to the effect that the Municipal Administration did not want to offer information through WLRP Radio Raíces.
>
> 2nd SECTION: This Special Commission shall summon the municipal employees, the victims as well as any person deemed to have evidence or be willing to offer information through a sworn statement, about the performance of the Municipal Administration before, during and after Hurricane Georges, in light of the Emergency Plan prepared by the Municipality, including the public accusations made by Mr. Ramón E. Colón Pratts to the effect that the Municipal Administration did not want to offer information through WLRP Radio Raíces.
>
> 3rd SECTION: The Special Commission shall submit a report to the Honorable Municipal Assembly of San Sebastián as to the findings, as well as the recommendations to be submitted to the Mayor.

Plaintiffs disclaim any "chilling effect" allegation. Rather, they contend that "they challenge specific actions" of "discrimination, retaliation and persecution on account of plaintiffs' 'publicly expressed criticism' of the Municipality and its administration on issues of public concern." Plaintiffs' Surreply (docket No. 23 p. 5)

 Even construing all inferences in plaintiffs' favor, we find nothing in the Draft Resolution which can be interpreted as an "institutional threat" directed at MR. COLON PRATTS or as a means to "investigate and persecute" him as alleged in the amended complaint. Apart from the adverse consequences to the radio station plaintiff has failed to point to evidence which depicts specific instances whereby "the challenged government action substantially interfered with [his] exercise of free speech." Russell W. Galloway, *Basic Free Speech Analysis*, 31 Santa Clara L.Rev. 883, 905 (1991). Aside from the allegations in the pleadings there is no evidence in the record from which we can reasonably infer that plaintiff suffered an "actual impact... serious enough to merit intensified first amendment scrutiny". *Id.*

Accordingly, we find that defendant is entitled to summary judgment on the First Amendment claims based on the Draft Resolution.

## THE § 1983 ACTION

 MR. COLON–PRATTS alleges deprivation of his Constitutional rights under 42 U.S.C. § 1983. In order to prevail he must bring forth evidence that (1) defendant acted "under color of state law" and (2) deprivation of a federally protected right. *Rogan v. City of Boston*, 267 F.3d 24 (1st Cir.2001); *Collins v. Nuzzo*, 244 F.3d 246 (1st Cir.2001).

Because we find that plaintiff has no First Amendment claim based on the deprivation of his own constitutional rights his § 1983 cause of action is also **DISMISSED.**

## CONCLUSION

Based on the foregoing, Defendant Municipality of San Sebastian's Motion to Dismiss (docket No. 20)[7] is **GRANTED.**

7. *See also* Plaintiffs' Opposition... (docket No. 21), defendant's Reply... (docket No. 22) and Plaintiffs' Surreply... (docket No. 23).

Plaintiffs having failed to prevail on their federal constitutional deprivation claims the complaint is hereby **DISMISSED.**

The state-based claims brought under our supplemental jurisdiction are **DISMISSED WITHOUT PREJUDICE.**

IT IS SO ORDERED.

### *JUDGMENT*

The court having granted defendant's Motion to Dismiss through its Order issued on this date,

It is hereby ORDERED AND ADJUDGED that the federal constitutional deprivation claims asserted in the complaint be and the same are hereby **DISMISSED.**

It is FURTHER ORDERED AND ADJUDGED that the state-based claims brought under our supplemental jurisdiction be and the same are hereby **DISMISSED WITHOUT PREJUDICE.**

IT IS SO ORDERED.